IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD D. GAINEY, ) | CASE NO. 5:19-cv-02436 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Richard Gainey ("Plaintiff" or "Gainey") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

As set forth below, the Administrative Law Judge ("ALJ") included in her Residual Functional Capacity ("RFC") assessment a limitation indicating that Gainey "must avoid . . . moderate noise." Tr. 37. However, the ALJ did not include this limitation in the hypothetical question to the Vocational Expert ("VE") upon which the ALJ relied in support of her Step Five finding. Tr. 108, 111. Instead the ALJ indicated in the VE hypothetical question that the hypothetical individual could have "only moderate exposure to noise." Tr. 108. Contrary to the Commissioner's position, the undersigned does not find that the error is harmless. Accordingly, the undersigned recommends that the Court **REVERSE** and **REMAND** this matter for further

1

vocational expert testimony based on a hypothetical question or questions that completely and accurately describe the noise limitation included in the RFC by the ALJ.

## I.  Procedural History

Gainey filed an application for DIB on July 28, 2016, alleging a disability onset date of May 27, 2015.  Tr. 34, 118, 119, 219-222, 240.  He alleged disability due to migraines, neck pain, back pain, dizziness, high blood pressure, inability to sit and stand for long periods, and stiffness in his neck and upper back.  Tr. 119, 149, 244.  After initial denial by the state agency (Tr. 148-151) and denial upon reconsideration (Tr. 155-161), Gainey requested a hearing (Tr. 162-163).  A hearing was held before the ALJ on June 26, 2018.  Tr. 80-115.

In her August 22, 2018, decision (Tr. 31-48), the ALJ determined that Gainey had not been under a disability from May 27, 2015, through the date of the decision (Tr. 35, 40).  Gainey requested review of the ALJ's decision by the Appeals Council.  Tr. 216-218.  On August 25, 2019, the Appeals Council denied Gainey's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 16-22.

## II. Plaintiff's Argument

Plaintiff presents one argument in this appeal.  He contends that that the ALJ's decision is not supported by substantial evidence because the VE did not testify that an individual with the RFC established by the ALJ could perform the jobs that the ALJ identified at Step Five.  Doc. 13, Doc. 17.  In light of the procedural nature of the one issue presented in this appeal, the evidence discussed and summarized herein is limited in nature.

## III. Evidence

Gainey was born in 1969 and was 45 years old on the alleged disability onset date.  Tr. 39.  He has a high school education.  Tr. 39.  Gainey's alleged disability onset date of May 27,

2015, was the last day he worked. Tr. 91. At the time Gainey stopped working, he was driving a semi which required him to have a CDL license. Tr. 98. Gainey had experienced two episodes of dizzy spells and was not allowed to drive. Tr. 98.

Gainey was represented at and testified at the hearing. Tr. 82, 85-104, 106-107. Gainey explained he was unable to work because of a number of issues, including inability to stand and sit for long periods, migraines – constant headaches, back, neck and knee pain. Tr. 91-92, 104. For his migraines, Gainey has to lie down in a dark room. Tr. 91. He has tried medication for his migraines but they have not worked. Tr. 91. Gainey uses a cane because he is unstable and he gets dizzy spell. Tr. 94-95, 98-99. Gainey had been advised to try pain management and physical therapy for his back and neck pain and vertigo. Tr. 99-100. He tried both without success. Tr. 100. Gainey has ulnar neuropathy, causing him to have problems using his hands and to drops thing. Tr. 95, 101-102. During the day, Gainey does not do a lot at home. Tr. 96-97. He does watch movies. Tr. 97.

The ALJ called a VE to testify at the hearing. Tr. 104-113. The VE described Gainey's past work to include work as (1) a semi-truck driver – a semi-skilled, medium level exertion job; and (2) a forklift operator – a semi-skilled, medium level exertion job. Tr. 107-108.

For her first hypothetical, the ALJ asked the VE to assume:

a hypothetical individual the claimant's age and education with the past jobs you described, and further assume that this individual is limited to light work specifically lifting and carrying occasionally 20 pounds and frequently 10 pounds with standing, sitting, and walking for up to six hours per workday, with only occasional push and pull in the bilateral upper extremities, with the additional limitations of only occasionally reaching overhead bilaterally, and frequently fingering bilaterally, with occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching; and never crawling; never unprotected heights; never any moving mechanical parts; never operating a motor vehicle; and only moderate exposure to noise.

3

Tr. 108. The ALJ then asked the VE whether the described individual could perform Gainey's past work. Tr. 108. The VE indicated that the described individual could not but there was other work that the individual could perform, including sales attendant, DOT[1] 299.677-010; housekeeper, DOT 323.687-014; and food service worker, DOT 311.677-010. Tr. 108-109. The VE provided national job incidence data for the identified jobs. Tr. 109.

For her second hypothetical, the ALJ asked the VE to assume the first hypothetical except that instead of light exertional work, the hypothetical individual could perform sedentary exertional work. Tr. 109. With that change, the ALJ asked the VE whether the described individual could perform Gainey's past work. Tr. 109. The VE indicated that the individual could not but there would be other work that the individual could perform, including food and beverage order clerk, DOT 209.567-014; charge account clerk, DOT 205.367-014; and document preparer, DOT 249.587-018. Tr. 109-110. The VE provided national job incidence data for the identified jobs. Tr. 109-110.

The ALJ asked the VE to consider both the first and hypotheticals with a change from frequent fingering to frequent handling. Tr. 110-111. The VE indicated that changing the hypotheticals to frequent handling would not change his earlier responses. Tr. 111. If the first two hypotheticals were changed from frequent handling to occasional handling, the VE indicated that there would be no jobs available to the individual limited to sedentary exertional work but there would be jobs available to the individual limited to light work, including school bus monitor, DOT 372.667-042; usher, DOT 344.677-014; and furniture rental clerk, DOT 295.357-018. Tr. 111-112. The VE provided national job incidence data for the identified jobs. Tr. 112.

---

[1] The Dictionary of Occupational Titles is published by the Department of Labor. *See* 20 CFR § 404.1566(d)(1).

4

Gainey's counsel asked the VE to consider the ALJ's second hypothetical but with one change – the individual would be limited to only occasional reaching, not just overhead, but in all directions bilaterally. Tr. 112-113. With that change, Gainey's counsel asked the VE how the sedentary occupational base would be affected. Tr. 113. The VE indicated that there would be no jobs available. Tr. 113.

Gainey's counsel next asked the VE whether, regardless of any other limitations that might be included, if an individual was off task 20 percent of the day, secondary to pain, would the occupational base be affected. Tr. 113. The VE indicated that such a limitation would be work preclusive. Tr. 113.

### IV. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[2] . . . .

42 U.S.C. § 423(d)(2).

---

[2] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

### V. The ALJ's Decision

In her August 22, 2018, decision, the ALJ made the following findings:[3]

1. Gainey met the insured status requirements through December 31, 2020. Tr. 36.

---

[3] The ALJ's findings are summarized.

6

2.  Gainey did not engage in substantial gainful activity since May 27, 2015, the alleged onset date. Tr. 36.

3.  Gainey had the following severe impairments: vertigo, headaches, degenerative disc disease of the cervical and thoracic spines, left ulnar neuropathy, small fiber neuropathy, and congenital fusion. Tr. 37.

4.  Gainey did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 37.

5.  Gainey had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except he can occasionally push and pull and reach overhead with bilateral upper extremities; he can frequently handle with the left and right hands; he can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs but never crawl or climb ladders, ropes, or scaffolds; he must avoid unprotected heights, moving mechanical parts, operation of a motor vehicle, and moderate noise. Tr. 37-39.

6.  Gainey was unable to perform any past relevant work. Tr. 39.

7.  Gainey was born in 1969 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 39.

8.  Gainey had at least a high school education and was able to communicate in English. Tr. 39.

9.  Transferability of job skills was not material to the determination of disability. Tr. 39.

10. Considering Gainey's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Gainey could perform, including sales attendant, DOT 299.677-010; housekeeper, DOT 323.687-014; and food service worker, DOT 311.677-010. Tr. 39-40.

Based on the foregoing, the ALJ determined that Gainey had not been under a disability, as defined in the Social Security Act, from May 27, 2015, through the date of the decision. Tr. 40.

### VI.     Law & Analysis

**A.     Standard of review**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).   The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

**B.     The undersigned recommends that the Court REVERSE and REMAND the Commissioner's decision**

Gainey argues that the ALJ's finding at Step Five that Gainey could perform the three jobs of sales attendant, DOT 299.677-010; housekeeper, DOT 323.687-014; and food service worker, DOT 311.677-010 was not supported by substantial evidence because the VE did not testify that someone with the RFC as formulated by the ALJ could perform those jobs.  Doc. 13, p. 7.  More particularly, Gainey argues that the RFC states that Gainey would need to avoid moderate noise environments but the ALJ asked the VE about an individual who could work in a moderate noise environment.  Doc. 13, p. 8.  Thus, he argues that the ALJ's reliance on the VE testimony in response to a VE hypothetical that did not accurately portray the noise limitation contained in the RFC cannot constitute substantial evidence.

8

To satisfy his burden at Step Five, the Commissioner must make "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Secretary of Health, Education & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)(alteration in original). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question[].]" *Id.* (internal citation omitted). However, if an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical question must accurately portray the claimant's limitations. *Id.*; *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that, although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do").

Here, the ALJ specifically included a limitation in the RFC that Gainey "must avoid . . . moderate noise." Tr. 37. However, to support her Step Five determination, the ALJ relied on VE testimony offered in response to a hypothetical question that did not include that limitation. Tr. 108, 111. Rather, the VE hypothetical upon which the ALJ relied included a limitation indicating that the individual could have "only moderate exposure to noise." Tr. 108, 111. Thus, rather that asking the VE about an individual who must avoid moderate noise, the ALJ's hypothetical allowed for work in an environment with moderate exposure to noise. Gainey contends that the error is not harmless because all three jobs identified by the VE in response to the hypothetical upon which the ALJ relied have a Noise Intensity Level of 3 which is consistent with moderate noise. Doc. 13, pp. 8-9, Doc. 13-1, Doc. 13-2, Doc. 13-3, Doc. 13-4.

9

The Commissioner recognizes that the ALJ's hypothetical question was different from the ALJ's RFC regarding moderate noise.  Doc. 16, p. 3.  Also, the Commissioner agrees that the DOT descriptions for the three jobs identified by the VE in response to the hypothetical question upon which the ALJ relied – sales attendant, housekeeper, and food service worker – indicate that the jobs may include moderate noise level.  Doc. 16, pp. 3-4.  However, the Commissioner contends that the error is harmless because Plaintiff's claim that "he 'was unable to perform in these work environments due to excess noise' lacks supports in the medical record[.]"  Doc. 16, p. 4 (quoting Plaintiff's Brief (Doc. 13, p. 9)).  In support, the Commissioner points to medical treatment notes from three neurologists in the record that reflect "normal/good hearing and no vestibular or musculoskeletal problems in Plaintiff's ears[]".  Doc. 16, pp. 4-5 (citing Tr. 539, 543, 657, 694, 781).  The Commissioner also argues that the only medical opinions in the record are from the state agency medical consultants who concluded that Gainey should avoid concentrated exposure to noise (Doc. 16, p. 5 (citing Tr. 128, 145)) and the Commissioner points out that Plaintiff testified at the hearing that he watched movies but did not testify about any problems with exposure to noise (Doc. 16, p. 5).

The Commissioner's harmless error argument is unavailing.  The ALJ had before her the evidence the Commissioner refers to but nevertheless formulated an RFC that indicated Gainey "must avoid . . . moderate noise."  Tr. 37.  It would be speculation to assume that the VE would have testified that the jobs of sales attendant, DOT 299.677-010; housekeeper, DOT 323.687-014; and food service worker, DOT 311.677-010 would be available to someone who "must avoid . . . moderate noise."

Considering that the ALJ relied upon VE testimony in response to a hypothetical question that cannot be said to accurately portray the noise limitation contained in the RFC formulated by

10

the ALJ, the undersigned cannot conclude that the ALJ's error was harmless or that remand would be a useless formality. *See e.g.*, *Losh v. Commissioner*, 2016 WL 3668138, * 3-4 (N.D. Ohio July 11, 2016) (concluding that the ALJ's omission of an RFC limitation from the VE hypothetical was not harmless error). Further, in light of the omission of the ALJ's RFC noise limitation from the VE hypothetical question upon which the ALJ relied, the undersigned is unable to find that the ALJ's Step Five determination is supported by substantial evidence. Accordingly, the undersigned recommends that the Court reverse and remand this matter for further vocational expert testimony based on a hypothetical question or questions that completely and accurately describe the noise limitation included in the RFC by the ALJ.

## VII. Recommendation

For the reasons discussed herein, the undersigned recommends that the Court **REVERSE** and **REMAND** the Commissioner's decision.

September 14, 2020   */s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).